AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

*September 24, 2020*

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Jesus Arnaldo TREVINO | ) | Case No. **4:20mj1775** |
| YOB: 1975 (U.S. Citizen) | ) | |
| Oscar Angel LOPEZ | ) | |
| YOB: 1974 (U.S. Citizen) | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of September 23, 2020 in the county of Montgomery in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C, Sections 846 | Conspiracy to possess with intent to distribute more than 5 kilograms of cocaine |
| Title 21, U.S.C. Sections 841(a)(1) | Possession with intent to distribute more than 5 kilograms of cocaine |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Hector Villarreal, Special Agent
*Printed name and title*

Sworn to via cellular telephone.

Date: September 24, 2020

*Judge's signature*

City and state: Houston, Texas

Christina A. Bryan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

### INTRODUCTION

I, Hector Villarreal, after being duly sworn, do hereby depose and state:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. Based on the following, there is probable cause to believe that Jesus Arnaldo TREVINO Salinas ("TREVINO") and Oscar Angel LOPEZ ("LOPEZ") and others have committed the following offenses: (1) conspiracy and possession with the intent to distribute a controlled substance in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

3. I have not included each and every fact concerning the investigation and I have set forth only the facts that I believe are essential to establish probable cause to support the issuance of an arrest warrant for TREVINO and LOPEZ for these offenses. Furthermore, the following statements, facts and observation are in sum and not verbatim.

1

## FACTS AND CIRCUMSTANCES

4. On August 5, 2020, the CI received a text message from TREVINO greeting the CI. The CI later responded "Chief el frio a 7.5 y los bonitos 28" (translating from Spanish as: 7.5 for the cold and 28 for the pretty ones. The CI then called TREVINO and apologized telling TREVINO that text message was not intended for him.

5. On September 18, 2020, at the request of TREVINO, the CI went to TREVINO's business to meet with him. During the meeting, TREVINO asked the CI if he had access to some "bonitos". The CI asked TREVINO what he meant by "bonitos". TREVINO said cocaine. The CI asked TREVINO how much he would be needing and TREVINO told the CI he would need to be supplied weekly. TREVINO said that it is dry right now meaning no product was available. TREVINO told the CI he would like to begin with 10 (kilos of cocaine). TREVINO also told the CI that he has a friend who lives in a gated community in Humble, TX that would buy some of them. The CI asked if this person was trustworthy and TREVINO stated "yes", he has known this man since high school.

6. TREVINO told the CI that before the pandemic he used to pay 24 ($24,000 per kilo) but is now willing to pay up to 30 ($30,000). TREVINO assured the CI, his friend from Humble was good for the money and pays upon delivery of the product.

7. Later that afternoon on September 18, 2018, TREVINO sent a text message to the CI saying, "there are titles for six cars right now." Based on a debrief of the CI, in the text message TREVINO is telling the CI that he has money for six kilograms of cocaine.

8. Between the period of September 18 through September 22, 2020 Trevino and the CI sent each other a series of text messages to coordinate a meeting for TREVINO to

2

purchase the cocaine. In one of those text messages, the CI told TREVINO he had seven available and requested that TREVINO have the "titles" in order.

9. On September 22, 2020, the CI contacted TREVINO and discussed how the transaction would occur the following day. During this conversation, TREVINO said his friend had enough for five.

10. On September 23, 2020, the CI contacted TREVINO and ask that he meet with the CI and the CI's associate. TREVINO arrived in a black Dodge Ram dually truck. Upon arriving, the CI walked over to TREVINO and guided him over to a vehicle the CI said was his work truck. The CI told TREVINO he wanted to introduce him to his associate because his associate was not wanting to conduct the transaction in a gated neighborhood. Once in the truck, the CI contacted his associate, an undercover agent ("UCA"), who was in possession of seven kilograms of cocaine.

11. The CI told the UCA to come down to his truck. The UCA arrived and entered the CI's vehicle. The CI introduced the UCA to TREVINO. The UCA had the seven kilograms of cocaine in a backpack. The UCA opened the backpack and placed a kilogram on the center counsel of the vehicle next to TREVINO. TREVINO asked how it looked. The UCA told TREVINO they were original, really clean, and pure. TREVINO said let me call my friend and attempted to make two facetime calls to his friend, with no answer. The UCA put the kilogram of cocaine back in the backpack and exited the vehicle and said call me when you know something.

12. Shortly after the UCA exited the vehicle, TREVINO received a call from an individual who told TREVINO he was at home in the shower. TREVINO told the individual, "I am here with the man and they are clean, they are good." The individual

asked TREVINO, "Can I come see." TREVINO responded that would be great. TREVINO then told the CI that his friend was just going to want to make sure that it looked good.

13. Shortly after the phone call between TREVINO and his friend, a surveillance team setup in a gated neighborhood in Humble, TX near LOPEZ's residence and saw an individual wearing a yellow shirt leave the residence in a brown Toyota Sequoia.

14. A short time later, agents conducting surveillance of the meeting between the CI, UCA and TREVINO saw the Toyota Sequoia arrive. At the same time TREVINO received a call from his friend and guided him to TREVINO's location. The CI then called the UCA to come down and join him and TREVINO in the vehicle.

15. Shortly thereafter an individual with a yellow shirt exited the Toyota Sequoia. Agents confirmed that the individual was LOPEZ. LOPEZ entered the rear passenger side of the CI's vehicle and sat behind TREVINO.

16. While in the vehicle, TREVINO handed LOPEZ a knife so that LOPEZ could cut into the kilogram of cocaine once the UCA brought it for inspection. The UCA arrived and joined the meeting between TREVINO, LOPEZ, and the CI. Upon entering the vehicle, UCA noticed a knife in LOPEZ left hand. The UCA opened up a backpack and LOPEZ reached in to grab a kilogram of cocaine. LOPEZ used the knife in his hand to cut into the kilogram of cocaine and then felt the cocaine with his fingertips and then smelled his fingertips. LOPEZ then said, "It looks good." LOPEZ said that he had been doing "this" for 20 years and have not gotten to where I am at by ripping anyone off. The CI told LOPEZ that there were seven. LOPEZ said, I can complete 4 of them and pay for 6 of them tonight. During the conversation, the UCA returned the cut kilogram of cocaine

4

to the backpack. The CI asked LOPEZ how much he had. LOPEZ said he had 120 or 115.

17. At this point, agents and officers approached the vehicle with clear police markings to execute an arrest. LOPEZ and TREVINO were arrested without incident. During a search of the vehicle the seven kilograms of cocaine were discovered in a backpack in the back of the vehicle next to where LOPEZ and the UCA were seated.

18. During a post arrest interview of TREVINO, TREVINO admitted that he was brokering a deal of seven kilograms of cocaine between LOPEZ and the CI. TREVINO advised that he was going to make $1,000 per kilogram of cocaine purchased from the UCA and the CI.

## CONCLUSION

19. Based on my experience and the aforementioned facts and observations, I believe there is probable cause that TREVINO and LOPEZ violated 21 U.S.C. § 846 and 841(a)(1).

Hector Villarreal
Special Agent
Homeland Security Investigations

Sworn to and subscribed via cellular telephone on this 24th day of September, 2020, and I find probable cause.

Christina A. Bryan
U.S. Magistrate Judge

5